Enedina ZAPATA, Individually and as Representative of the Estate of Aaron Joseph Lozano, Deceased Minor Child, and Oscar Lozano, Appellants,

v.

THE CHILDREN'S CLINIC, Tom McNeil, M.D., and Joseph Oshman, M.D., Appellees.

No. 13–98–200–CV.

Court of Appeals of Texas, Corpus Christi.

June 24, 1999.

Rehearing Overruled Aug. 26, 1999.

Raul Garcia, Falfurrias, Cage Wavell, Corpus Christi, for appellants.

Richard C. Woolsey, Carlos Villarreal, Barger, Hermansen, McKibben & Villarreal, Corpus Christi, for appellees.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## O P I N I O N

Opinion by Justice RODRIGUEZ.

Appellants, Enedina Zapata and Oscar Lozano ("Zapata"), appeal the granting of a "no-evidence summary judgment" in favor of The Children's Clinic, Dr. Tom McNeil, and Dr. Joseph Oshman (the "Clinic"). Zapata brought suit against the Clinic alleging negligence and wrongful death in the treatment of their five month old son, Aaron Lozano, who died while under the Clinic's care. The Clinic filed a motion for summary judgment, asserting there was no evidence the physicians breached the applicable standard of care, which the trial court granted. We reverse and remand.

FACTS

On June 20, 1994, Enedina Zapata took Aaron to the Clinic for treatment of a broken leg. Dr. Oshman admitted Aaron to Driscoll Children's Hospital (the "Hospital"). At the time Aaron was admitted to the Hospital, Zapata informed hospital personnel that Aaron was currently taking Reglan for treatment of gastroesophageal reflux.[1] In addition to treating Aaron at the Hospital, Drs. McNeil and Oshman were Aaron's pediatricians who had initially prescribed the Reglan for Aaron's condition. Aaron had been taking the Reglan for approximately three months prior to June 20.

While there is some dispute as to whether the Clinic ordered Aaron's Reglan medication be continued while he was in the Hospital, it is undisputed he did not receive Reglan while he was there. On June 23, Aaron had two episodes of vomiting accompanied by diarrhea. However, later that day, he ate without incident. On the morning of June 24, Aaron again vomited. Later that day, Aaron's father fed, burped, and laid Aaron down to sleep. He then left the room for a few minutes and upon returning, noticed Aaron was asleep and lying on his back. Later, he heard Aaron make a gasping noise, noticed he was blue in color, and not breathing. Attempts to resuscitate Aaron were unsuccessful. The autopsy report indicated the cause of death was unknown.

Zapata sued the Clinic asserting Aaron's death was due to the Clinic's negligence in failing to administer Aaron's Reglan. Upon motion by the Clinic, the trial court granted a no-evidence summary judgment on the basis that there was no evidence the Clinic breached the applicable standard of care.

In their sole issue, Zapata alleges the trial court erred in granting the summary judgment because there was evidence to raise a genuine issue of material fact.

1. Gastroesphageal reflux is a condition in many infants whereby they regurgitate their stomach contents—commonly referred to as "spitting up."

STANDARD OF REVIEW

 A no-evidence summary judgment is equivalent to a pretrial directed verdict and, in reviewing the granting of a no-evidence summary judgment, this Court applies the same legal sufficiency standard as applied in reviewing directed verdicts.[2] *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. denied); Judge David Hittner and Lynne Liberato, *No–Evidence Summary Judgments Under the New Rule, in* STATE BAR OF TEXAS PROF. DEV. PROGRAM, 20 ADVANCED CIVIL TRIAL COURSE D, D–5 (1997). We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Moore*, 981 S.W.2d at 269. The trial court may not grant a no-evidence summary judgment if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX.R. CIV. P. 166a(i); Judge David Hittner and Lynne Liberato, *No–Evidence Summary Judgments Under the New Rule, in* STATE BAR OF TEXAS PROF. DEV. PROGRAM, 20 ADVANCED CIVIL TRIAL COURSE D, D–5 (1997); *see also Havner*, 953 S.W.2d at 711; *Moore*, 981 S.W.2d at 269. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Moore*, 981 S.W.2d at 269 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)). On the other hand, when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," it is more than a scintilla. *Id.; see also Havner*, 953 S.W.2d at 711.

 As noted above, the trial court must grant the motion for no-evidence summary judgment unless the respondent produces summary judgment evidence raising "a genuine issue of material fact." TEX.R. CIV. P.166(a)i. To determine the meaning of the term "a *genuine* issue of *material fact*," we look to the interpretation of Federal Rule of Civil Procedure 56(c). *See Isbell v. Ryan*, 983 S.W.2d 335, 338 (Tex.App.—Houston [14th Dist.] 1998, no pet.); *Moore*, 981 S.W.2d at 269; Judge David Hittner and Lynne Liberato, *No–Evidence Summary Judgments Under the New Rule, in* STATE BAR OF TEXAS PROF. DEV. PROGRAM, 20 ADVANCED CIVIL TRIAL COURSE D, D–5 (1997). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court, analyzing rule 56(c), noted that a fact is "material" only where it affects the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505; *see also Isbell*, 983 S.W.2d at 338; *Moore*, 981 S.W.2d at 269. In making this determination, courts rely upon the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Isbell*, 983 S.W.2d at 338. "A material fact is 'genuine' if the evidence is such that a reasonable jury could find the fact in favor of the non-moving party." *Moore*, 981 S.W.2d at 269 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

DISCUSSION

 The elements of a medical malpractice cause of action are: (1) the duty of the physician to act according to a certain standard; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach and the injury. *Silvas v. Ghiatas*, 954 S.W.2d 50, 52 (Tex.App.—San Antonio 1997, writ denied). The Clinic moved for and was

2. We note that several of our sister courts have applied this standard in reviewing the new "no-evidence summary judgment." *See Bomar v. Walls Regional Hosp.*, 983 S.W.2d 834, 840 (Tex.App.—Waco 1998, no pet.); *Isbell v. Ryan*, 983 S.W.2d 335, 338 (Tex.App.— Houston [14th Dist.] 1998, no pet.); *Heiser v. Eckerd Corp.*, 983 S.W.2d 313, 316 (Tex. App.—Fort Worth 1998, no pet.); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.).

granted summary judgment on the basis that there was no evidence the physicians breached the standard of care.

Viewing the evidence in the light most favorable to Zapata, Dr. Stacey Fink, Zapata's expert, testified the Clinic breached the standard of care because they failed to administer Aaron's Reglan medication that had previously been prescribed. Dr. Fink noted that while the decision of whether to continue Reglan treatment for reflux while Aaron was hospitalized was a discretionary one, he explained there was no indication in the medical records that Aaron was taken off of Reglan. He further acknowledged that because the decision is discretionary with the physician prescribing the medication, he would defer to that doctor and if that doctor chose to discontinue Aaron's Reglan treatment, it would not be a breach of the standard of care.

In addition to Dr. Fink's testimony, Zapata presented evidence that the Hospital records contain no indication that Aaron was taken off of Reglan. Furthermore, Enedina Zapata testified that the Clinic did not inform her of any decision to take Aaron off of his medication.

The Clinic included with its motion for summary judgment the deposition testimony of Drs. Oshman and McNeil. In their depositions, they asserted that Dr. Oshman consciously decided to discontinue Aaron's Reglan medication at the time Aaron was admitted to the Hospital. However, because this is contrary evidence, we must disregard it in evaluating the trial court's decision on the Clinic's motion for summary judgment. *See Havner*, 953 S.W.2d at 711; *Moore*, 981 S.W.2d at 269.

Therefore, the question before this court, as both parties acknowledge, is whether Dr. Fink's testimony that Reglan should not have been discontinued without authorization from the prescribing physician, considered in conjunction with the conspicuous absence of any notation in the Hospital records showing that Dr. Oshman (or Dr. McNeil) decided to take Aaron off of Reglan, and Enedina Zapata's testimony that she was not informed that her son had been taken off of Reglan is more than a "scintilla" of probative evidence raising a genuine issue of material fact. Because we find the above evidence is more than a mere scintilla of evidence over which reasonable jurors could differ in their conclusions, we hold the trial court erred in granting the Clinic's no-evidence summary judgment. Zapata's sole issue is sustained.

The judgment of the trial court is REVERSED and this cause REMANDED for further proceedings.