NUMBER 13-99-530-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


PRINCE LEE, Appellant,


v.


GRANT-LYDICK BEVERAGE COMPANY D/B/A 7UP/RC COLA/BIG RED OF VICTORIA, Appellee.

___________________________________________________________________


On appeal from the 135th District Court of Victoria County, Texas.

__________________________________________________________________


O P I N I O N


Before Justices Hinojosa, Yañez, and Chavez (1)

Opinion by Justice Yañez



Prince Lee, appellant, appeals the trial court's grant of summary judgment in favor of appellee, Grant-Lydick Beverage
Company ("the company") on causes of action alleging wrongful termination in retaliation for filing a workers'
compensation claim (2) and malicious prosecution. In two issues, Lee contends the trial court erred in granting summary
judgment. (3) We reverse and remand, in part, and affirm, in part, the trial court's judgment. 

Background


On October 1, 1996, Lee was hired as a merchandiser at the company's facility in Victoria, Texas. On November 2, 1996,
he suffered an on-the-job injury when the company vehicle he was driving was hit by another car. Lee was off work for
one week and was released to return to work on light duty on November 12, 1996. 

On the evening of November 21, 1996, Don Harris, the branch manager of the Victoria facility, received a call from one of
the company's warehouse loaders, Eugene Brister. Brister told Harris that he had observed Lee taking several cases of soda
and some gasoline from the company pump. The following day, Harris confronted Lee with the allegations. Lee contends
he denied the allegations. Harris suspended Lee, effective immediately, and turned the investigation over to Tom Gomez,
head of the company's personnel department. Upon the instruction of Bill Rhame, the company's business manager, Harris
also reported the theft to the Victoria Police Department.

Gomez called Lee and asked him to come to a meeting on Monday, November 25, 1996 at the company's facility to discuss
the allegations. Lee came to the meeting accompanied by his attorney. Because the company was not represented by
counsel at the meeting, Gomez asked Lee to answer questions without his attorney being present. On the advice of his
counsel, Lee refused. Lee contends that he did, however, tell Gomez that he "didn't do anything wrong." The following
day, November 26, Gomez sent Lee a letter requesting his responses to questions about the incident. The letter asked Lee
to respond to the questions by December 2, 1996, and advised him that if no response was received by that date, the
company would complete its investigation on the basis of the available information. Lee did not respond to the letter. On
December 6, 1996 Gomez sent Lee a letter advising him of his termination for violation of the company's policies against
theft of company property and insubordination.

On December 3, 1996, Lee was arrested and charged with the offense of theft. He was taken to the Victoria County Jail,
where he was later released on bond. His name and the theft charges were printed in the local newspaper. The criminal
charges were dismissed on February 27, 1997. 

On June 11, 1997, Lee filed suit, alleging malicious prosecution, defamation, and retaliation for filing a workers'
compensation claim. The company filed a "traditional" and "no evidence" motion for summary judgment, contending it
was entitled to summary judgment on all causes of action. Following a hearing, the trial court granted the motion. This
appeal ensued. 

Standard of Review


In a traditional summary judgment proceeding, the standard of review on appeal is whether the successful movant at the
trial level carried the burden of showing that there is no genuine issue of material fact and that judgment should be granted
as a matter of law. M. D. Anderson v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000); Am. Tobacco Co., Inc. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr. Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 548 (Tex. 1985). In resolving the
issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all
reasonable inferences, including any doubts, must be resolved in the non-movant's favor. Willrich, 28 S.W.3d at 23-24;
Nixon, 690 S.W.2d at 548-49; Noriega v. Mireles, 925 S.W.2d 261, 266 (Tex. App.-Corpus Christi 1996, writ denied). 
When the defendant is the movant and submits summary judgment evidence disproving at least one essential element of
each of the plaintiff's causes of action, then summary judgment should be granted. Grinnell, 951 S.W.2d at 425; Science
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). 

When a motion is presented under Texas Rule of Civil Procedure 166a(i) asserting there is no evidence of one or more
essential elements of the nonmovant's claims upon which the nonmovant would have the burden of proof at trial, the
movant does not bear the burden of establishing each element of its own claim or defense. General Mills Rests. Inc., v.
Tex. Wings, Inc., 12 S.W.3d 827, 832 (Tex. App.-Dallas 2000, no pet.); Lampasas v. Spring Ctr., Inc., 988 S.W.2d 428,
432-33 (Tex. App.-Houston [14th Dist.] 1999, no pet.). Rather, the burden shifts to the nonmovant to present enough
evidence to be entitled to a trial, i.e., evidence that raises a genuine fact issue on the challenged elements. See Tex. R. Civ.
P. 166a(i) cmt. If the nonmovant is unable to provide enough evidence, the trial judge must grant the motion. See
Lampasas, 988 S.W.2d at 433.

A "no-evidence" summary judgment granted under rule 166a(i) is essentially a pre-trial directed verdict, and we apply the
same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. 
Zapata v. Children's Clinic, 997 S.W.2d 745, 747 (Tex. App.-Corpus Christi 1999, pet. denied); Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.-San Antonio 1998, pet. denied); Moritz v. Bueche, 980 S.W.2d 849, 853 (Tex. App.-San
Antonio 1998, pet. denied). We review the evidence in the light most favorable to the party against whom the summary
judgment was rendered, disregarding all contrary evidence and inferences. Merrell Dow Pharm., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997); Whalen v. Condo. Consulting and Mgmt. Servs., Inc., 13 S.W.3d 444, 446 (Tex.
App.-Corpus Christi 2000, pet. denied); Zapata, 997 S.W.2d at 747. A no- evidence summary judgment is improper if the
respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. Havner, 953
S.W.2d at 711; Zapata, 997 S.W.2d at 747. Less than a scintilla of evidence exists when the evidence is so weak as to do
no more than create a mere surmise or suspicion of a fact. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983);Zapata, 997 S.W.2d at 747. More than a scintilla of evidence exists when the evidence rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions. Havner, 953 S.W.2d at 711; Zapata, 997 S.W.2d
at 747.

If a summary judgment is granted generally, without specifying the reason, it will be upheld if any ground in the motion for
summary judgment can be sustained. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999) (citing
Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995)); Weakly v. East, 900 S.W.2d 755, 758 (Tex. App.-Corpus
Christi 1995, writ denied).

Retaliatory Discharge


In Lee's first issue, he contends the trial court erred in granting summary judgment on his claim of retaliation due to his
filing a workers' compensation claim under section 451 of the Texas Labor Code. See Tex. Lab. Code Ann. § 451.001
(Vernon 1996). In its motion for summary judgment, the company argued it was entitled to summary judgment because
Lee presented no evidence of a causal connection between his filing of a workers' compensation claim and his termination. 
In addition, the company contends it provided legitimate, non-discriminatory reasons for terminating Lee. Lee argues that
summary judgment is improper because the evidence raises genuine fact questions concerning the company's motive in
terminating him shortly after he filed a workers' compensation claim. 

Section 451.001 provides

 A person may not discharge or in any other manner discriminate against an employee because the employee has:

 (1) filed a workers' compensation claim in good faith; 

 (2) hired a lawyer to represent the employee in a claim; 

 (3) instituted or caused to be instituted in good faith a proceeding under Subtitle A; or

 (4) testified or is about to testify in a proceeding under Subtitle A.

 Id. An employee has the burden of demonstrating a causal link between the discharge and the filing of a workers'
compensation claim. Garcia v. Allen, 28 S.W.3d 587, 600 (Tex. App.-Corpus Christi 2000, pet. denied). In order to
recover for retaliatory discharge, an employee must prove that but for the filing of a workers' compensation claim, the
discharge would not have occurred when it did. City of Fort Worth v. Zimlich, 29 S.W.3d 62, 67 (Tex. 2000); (4) Cont'l
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). An employee need not show he was fired solely because
he filed a workers' compensation claim; however, he must establish that "but for" the filing of the claim, the discharge
would not have occurred when it did. Cazarez, 937 S.W.2d at 450. This causal connection is an element of the employee's
prima facie case and may be established by direct or circumstantial evidence. Allen, 28 S.W.3d at 600. 

Circumstantial evidence sufficient to establish a causal link between termination and filing a compensation claim includes: 
(1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude
toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment
in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. Cazarez,
937 S.W.2d at 450-51;Allen, 28 S.W.3d at 600. Subjective beliefs are no more than mere conclusions and are not
competent summary judgment evidence. Tex. Division-Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex. 1994). Once
an employee has established the causal link, the employer bears the burden to rebut the alleged improper termination by
showing there was a legitimate reason behind it. Allen, 28 S.W.3d at 600. Thereafter, in order to survive a motion for
summary judgment, the burden shifts back to the employee to produce controverting evidence of a retaliatory motive. Id. 

In this case, the company sought summary judgment on the causation element of Lee's cause of action. Specifically, the
company argued that: (1) it terminated Lee for a legitimate, nondiscriminatory reason; and (2) there was not but-for
causation between Lee's filing of a workers' compensation claim and the termination. 

Assuming Lee alleged a prima facie case of retaliatory discharge, the burden was on the company as the summary judgment
movant to prove a legitimate, nondiscriminatory reason for Lee's termination. See Willrich, 28 S.W.3d at 24. In its motion
for summary judgment, the company asserted that it terminated Lee because of: (1) his insubordination in refusing to
cooperate in the company's investigation of the alleged theft; and (2) the company's belief, based on Brister's eyewitness
report, that Lee took sodas and gasoline from the company. The company's summary judgment evidence included the
affidavit of Bill Rhame, which stated that he made the decision to terminate Lee because of Lee's insubordination in failing
to cooperate with the investigation and the belief, based on Brister's eyewitness report, that Lee took company property
without permission. Rhame's affidavit also stated that after he was told that Lee had visited Brister's apartment and
engaged in threatening behavior, he instructed Harris to contact the police in order to protect Brister. The evidence also
included Harris's affidavit and deposition testimony, in which he stated that he did not participate in the decision to
terminate Lee, but instead, turned the investigation of the incident over to Gomez, the head of the personnel department. 
Gomez's affidavit stated that he was instructed to investigate the alleged theft and did so by questioning Brister, who told
him that he saw Lee take the sodas and gasoline. Brister also told Gomez that Lee had called him and asked him not to tell
Harris about the incident. Gomez's affidavit states that another employee, Mark Richter, confirmed that he was present
when Lee called Brister and asked him not to tell Harris. Gomez stated that he attempted to question Lee about the
incident, but that Lee refused to answer any questions without his attorney being present.

We conclude that the company's summary judgment evidence established that it had a legitimate nondiscriminatory reason
for terminating Lee. Once the company established a legitimate nondiscriminatory reason, Lee had the burden to show that
a fact issue existed that the company's reasons for terminating him were pretextual. See Willrich, 28 S.W.3d at 24 (citing
Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S., 133, 142-43 (2000)). Lee could respond by presenting evidence
raising a fact issue on pretext or by challenging the company's summary judgment evidence as failing to prove, as a matter
of law, that the company had a legitimate nondiscriminatory reason for terminating him. See id. 

Lee points to the following factors as evidence of the company's retaliatory motive: (1) the fact he had filed a workers'
compensation claim and the persons making the termination decision knew of the claim; (2) the negative attitude displayed
toward him by his supervisor, Harris, following the claim; (3) the company's departure from customary practice in reporting
a theft of company property worth $96.00 to the police; and (4) the fact that he was terminated less than five weeks after his
injury.

With regard to the first factor, it is undisputed that the individual who made the decision to terminate Lee knew he had filed
a workers' compensation claim. In his affidavit, Rhame stated that he made the decision to terminate Lee. He also stated
that although he knew Lee had filed a compensation claim, that fact played no role in the decision; he terminated Lee
because of his insubordination and Brister's statement that Lee had taken soda and gasoline without permission.

Regarding the second factor, Lee points to his own deposition testimony as evidence of Harris's negative attitude toward
him following his injury. Lee testified that he returned to light duty work on November 13th with restrictions that included
staying off his feet, no lifting, and no bending. He complains that despite these restrictions, Harris instructed him to sweep
the floor. According to Lee, he told Harris that he could not stay on his feet for long periods of time, but Harris responded,
"[j]ust you know, sweep the floor" and "[j]ust keep busy." Lee testified that he left work early that same day and returned
to the doctor because his back was hurting. The doctor gave him another note which said he should be off work for
physical therapy. Lee testified he did not do any more work for the company after the 13th. Lee testified as follows
concerning Harris's negative treatment toward him:Q [counsel]: You say Mr. Harris had a bad attitude?



A: He had a bad attitude.

Q: In what way?

A: Just in the way I mean, you know, degrading me, just talking---the way he talked to me.

Q: Give me some examples of how he talked to you that were degrading.

A: Like he just, you know, called me--- you know, he just used words like, you know, "You mess up again, like don't stock
a shelf up---" you know, he tried to accuse me of not being at a store when I was at a store and, you know, I had to have the
supervisor call him but, you know, "You just make sure you stock the shelf up and don't quit till everything is stocked up,"
you know, with an attitude and the way he resented [sic] his voice, you know, at me. I mean he just had a bad attitude.

Q: Any other examples of things he said to you that you found degrading?

A: I can't recall right now.

Q: How long after you began employment at Grant-Lydick did you observe or feel that Mr. Harris was treating you in a
degrading manner?

A: Probably once I started driving to stores. 



* * * * *



Q [counsel]: Did you have any other conversations with Mr. Harris about your injury?

A: When I went to the doctor the day of the 13th I left work early and went to the doctor, came back, and he sent me to a
physician--- a physical therapist. I'm sorry. I had a note saying I need days off, you know, due to the injury. My wife and I
went, took a note back, and he was like, you know, I wasn't hurt, you know, I wasn't hurt and he jumped to my face because
he was talking to me and I didn't want to hear him. I said, "Well, pppp, [sic] you know, I'm going to a physician--- a
physical therapist. You know, I'm sorry," and I turned my back. He was like, "Don't turn your back on me, boy. Don't ever
turn your back on me," and he wanted me to retaliate I guess or hit him because---well, nothing.

Q: As best you can recall because to me it's kind of important what did he say to you when you gave him the doctor's note?

A: He said he had someone watching me and that time he said my girlfriend at Mr. Gatti's riding bumper cars at 11 pm. at
night and I told him, "That's not true," and he was like, "Well, I got a witness said he saw you at Mr. Gatti's riding bumper
cars," . . .

* * * * *


Q [counsel for company]: I mean I remember you talking about him saying that he had had a witness who said you were
riding bumper cars. Any other way that he told you that he thought you were not injured?

A: That's it right there.

Q [reading from Lee's discovery responses]: "He also cursed at me and called me racist names." How many times do you
recall him cursing at you?

A: Numerous of times. I mean I think two times, three times I believe, two or three.

Q: Do you recall when that occurred?

A: No.

Q: Was it before November 2, 1996?

A: One was and then the other two was after November 2.

Q: Do you recall what kind of curse words he used at you?

A: No, sir. I know it was a curse word.

Q: Did he use the same one?

A: No, sir.

Q: And you don't recall any of them today?

A: Uh-uh. Because I know there was two of them--two of them were different. I mean I know that for sure. "Your damn
back is not hurt," something like that, is what he said.

Q: "And called me racist names." How often did that happen?

A: This happened once.

Q: And what were the racist names?

A: "Boy." 

With respect to the third and fourth factors, Lee argues that the company "did not follow established company policies in
reporting the alleged $96.00 theft." As evidence in support of this assertion, Lee points to the following deposition
testimony of Bill Rhame:

The involvement that I had in the filing of the charges is--- first of all, the minor few cases, few gallons of gasoline from a
business standpoint you wouldn't normally run out and file charges against someone. It would cost the company more just
to devote the manpower to get ahold of the police department than it would for the value of the product. 

Regarding the fifth factor, as evidence that the stated reason for the discharge was false, Lee notes that he denied taking any
company property. Lee cites his own deposition testimony concerning his response to the accusation:

Q [counsel]: During your conversation with Mr. Harris on the 22nd of November, 1996 did he ask you if you had put gas in
your private vehicle on November 21, 1996?

A: Yes, sir.

Q: And what was your response?

A: No, sir.

Q: During that conversation do you recall telling Don Harris, "What the hell are you going to do about it?" (5)

A: No, sir.

Q: You don't recall or you didn't say it?

A: I didn't say it.

Q: Did you also tell Mr. Harris that other people--- that other people do it?

A: Yes, sir.

Q: Okay. And why would you make that statement to him?

A: Other people do it--- I mean take--- I mean he's saying I took gas but they don't even keep record of the gas. I mean I
seen Mr. Harris come in there and get gas left and right and don't even write it down. I seen Jesse come in there and get gas
and don't write it down. I seen Mr. Harris' son come in there and get gas and don't write it down. Even when I used the
work vehicle I never wrote it down.

As further evidence that the company's stated reason for the discharge was not the true reason, Lee notes that the criminal
charges against him were later dismissed at the request of the district attorney. Lee also asserts that the company had no
reason to accept Brister's accusation over his denial, and contends that the choice to believe Brister is evidence of the
company's "malice." Lee also points to the fact that his termination occurred less than five weeks after he suffered the
injury.

The company argues that because the evidence shows that Rhame, not Harris, made the decision to terminate Lee, any
negative comments by Harris are mere "stray remarks" that cannot constitute evidence of retaliation. Mere "stray remarks"
are typically insufficient to show discrimination. Willrich, 289 S.W.3d at 25. Comments, may, however, provide some
evidence of discriminatory intent if they are: (1) related to the protected class of persons of which the plaintiff is a member;
(2) proximate in time to the termination; (3) made by individuals with authority over the employment decision; and (4)
related to the employment decision at issue. See Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 683 (5th Cir. 2001);
Wal-Mart Stores v. Bertrand, 37 S.W.3d 1, 10 (Tex. App.-Tyler 2000, pet. denied). Moreover, a remark that comes from
either the official decision-maker, or one who had influence over the decision-maker, may properly be taken into account as
evidence of discriminatory animus. See Medina, 238 F.3dat 683-84 (in summary judgment context, court is not permitted
to draw inference that discriminatory comment by non-decision maker was inconsequential to hiring decision). Here,
Harris was the branch manager of the facility where Lee was employed, and although he did not make the decision to
terminate Lee, we are not permitted to make the inference that any negative comments by Harris were inconsequential in
the decision. See id.

In addition, Lee was terminated less than five weeks from the date he sustained a work-related injury. Proximity in time
may be considered as some evidence that a causal link exists. Fields v. Teamsters Local Union 988, 23 S.W.3d 517, 529
(Tex. App.-Houston [1st Dist.] 2000, pet. denied) (proximity of time may be considered if not too distant). It is also
undisputed that Rhame knew that Lee had filed a workers' compensation claim. 

Viewing the evidence in the light most favorable to Lee, as we are required to do, we conclude there is some evidence that
raises a genuine issue of material fact as to whether Lee was terminated pretextually. Lee has produced some evidence on
his retaliatory discharge claim. He has met the standard required under rule 166a(i) for a no-evidence summary judgment
by bringing forward some evidence on the issue challenged. See Tex. R. Civ. P. 166a(i). We sustain Lee's first issue.

Malicious Prosecution


In his second issue, Lee contends the trial court erred in granting summary judgment on his claim of malicious prosecution. 
The elements of a cause of action for malicious prosecution are: (1) a criminal prosecution was commenced against the
plaintiff; (2) the prosecution was initiated or procured by the defendant; (3) the prosecution terminated in favor of the
plaintiff; (4) the plaintiff was innocent; (5) the defendant lacked probable cause to instigate the prosecution; (6) the
defendant acted with malice in bringing about the prosecution; and (7) the plaintiff suffered damages as a result of the
prosecution. Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 1997); Alvarez v. Anesthesiology Assocs.,967
S.W.2d 871, 875 (Tex. App.-Corpus Christi 1998, no pet.). 

In its motion for summary judgment and on appeal, the company argues that Lee cannot meet the second, fifth, and sixth
elements of the cause of action. As noted, as summary judgment movant, the company carries the burden of establishing
that no material fact issue exists and that it is entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c); Willrich,
28 S.W.3d at 23.

The company contends that probable cause existed to file a complaint against Lee based on the following: (1) Brister gave
Harris an eyewitness account that he saw Lee taking the sodas and gasoline; (2) Harris conducted an inventory that
confirmed the sodas were missing; (3) Rhame was told that Lee had engaged in threatening behavior towards Brister; (4)
Gomez had attempted to meet with Lee to discuss the allegations, but Lee had refused to do so; and (5) Lee did not respond
to Gomez's letter requesting Lee's response to the investigation of the incident. 

Lee argues that the company lacked probable cause to institute criminal proceedings, and thus, a summary judgment in its
favor was improper. Specifically, Lee argues that the evidence raises a fact question as to whether Harris had a reasonable
belief that he committed the theft. In his summary judgment response, Lee argued that the company lacked probable cause
to institute a proceeding because the only basis for the charge was Brister's statement. Lee argued that Brister, like Lee, had
only been employed for a short while and the company made no attempt to "substantiate" his claims or determine whether
Brister might have taken the property. As summary judgment evidence, Lee pointed to Harris's deposition testimony, in
which Harris stated that he reported the theft on November 22 and that the basis for the accusation against Lee was Brister's
statement. 

Actions for malicious prosecution are not favored. Browning-Ferris Indus., Inc. v. Lieck, 881 S.W.2d 288, 291 (Tex.
1994); Compton v. Calabria, 811 S.W.2d 945, 949 (Tex. App.-Dallas 1991, no writ). There is an initial presumption that
the defendant in a malicious prosecution case acted reasonably and in good faith and had probable cause to initiate the
proceedings. Richey, 952 S.W.2d at 517; Alvarez, 967 S.W.2d at 877. The presumption disappears once the plaintiff
produces evidence that the motives, grounds, beliefs, and evidence upon which the defendant acted did not constitute
probable cause. Richey, 952 S.W.2d at 518; Alvarez, 967 S.W.2d at 877. The burden then shifts to the defendant to offer
proof of probable cause. Richey, 952 S.W.2d at 518. If the facts underlying the decision to prosecute are not disputed,
whether probable cause existed is a question of law to be decided by the trial court. Id. 

In the context of malicious prosecution, probable cause is defined as "the existence of such facts and circumstances as
would excite belief in the mind of a reasonable person, acting on the facts within his knowledge, that the person charged
was guilty of the crime for which he was prosecuted." Alvarez, 967 S.W.2d at 876 (citing Richey, 952 S.W.2d at 517). In
Richey, the supreme court stated:

The probable cause inquiry asks only whether the complainant reasonably believed that the elements of a crime had been
committed based on the information available to the complainant before criminal proceedings began. When a complainant
reasonably believes a crime has occurred, the reasonableness of that belief is not negated by the failure to fully disclose all
relevant facts to the officer. 

Richey, 952 S.W.2d at 519. Thus, "[t]he question to be answered is not what the facts actually were, but rather what the
defendant honestly and reasonably believed the facts to be." Alvarez, 967 S.W.2d at 876. 

Here, we conclude that the facts as the company honestly and reasonably believed them to be before the criminal
proceedings were instituted included: (1) Brister's eyewitness account that he saw Lee take the sodas and gasoline; and (2)
Harris's inventory that confirmed that the sodas were missing. We find that Lee's summary judgment evidence does not
controvert the company's evidence that it acted in good faith and fails to raise a fact question as to the existence of probable
cause. We overrule Lee's second issue. 

Conclusion 


The judgment of the trial court is AFFIRMED with respect to Lee's causes of action for malicious prosecution and
defamation. The judgment is REVERSED AND REMANDED with respect to Lee's cause of action for retaliatory
discharge. 

 
 

LINDA REYNA YAÑEZ

Justice






Do not publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

19th day of July, 2001.

 

1. Retired Justice Melchor Chavez assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. See Tex. Lab. Code Ann. § 451.001 (Vernon 1996).

3. Although the trial court also granted summary judgment as to Lee's defamation claim, he has not challenged the trial
court's grant of summary judgment on that claim by argument or citation to authority. Accordingly, he has waived any
error. See Tex. R. App. P. 38.1(e); Stewart v. Tex. Lottery Comm., 975 S.W.2d 732, 737 (Tex. App.-Corpus Christi 1998,
no pet.). 

4. Although Zimlich involves a "whistleblower" claim, the standard of causation used in whistleblower cases is applicable
in employment discrimination cases. See Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Dep't of
Human Servs. v. Hinds, 904 S.W.2d 629, 635-36 (Tex. 1995); Gorges Foodservice, Inc. v. Huerta, 964 S.W.2d 656, 667
(Tex. App.-Corpus Christi 1998, no pet.). 

5. Harris testified that when he confronted Lee about the theft, "He said I've seen other people take it. What the hell are you
going to do about it?"