NUMBER 13-00-741-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

 
 



PASCUAL DOMINGUEZ, ET AL., Appellants,



v.





EDWIN PAYNE Appellee.

 



On appeal from the 332nd District Court

of Hidalgo County, Texas.




O P I N I O N

Before Chief Justice Valdez and Justices Hinojosa and Castillo

Opinion by Chief Justice Valdez



 This is an appeal from a no-evidence summary judgment. The appellants (1) raise two points of error: 1) the
trial court erred in rendering a no-evidence summary judgment because the motion filed by the appellee was
legally insufficient, and 2) the trial court erred in rendering a no-evidence summary judgment because the
appellants met their burden by bringing forth more than a scintilla of evidence. We reverse the trial court's
granting of a no-evidence summary judgment and remand this cause for further proceedings consistent with
this opinion.

Facts

 Appellants purchased tracts of land from Tejas Building and Development Co., Inc. (Tejas), believing that the
tracts were subject to use restrictions. Upon recognizing that other lots were being used as mobile home sites,
they sued Tejas, Eddie Torres, the sales representative, and Edwin Payne, the majority shareholder, for
misrepresentation, recision, and return of their payments. Payne filed a no-evidence motion for summary
judgment, claiming that he could not be held personally liable to appellants for acts allegedly committed by
Tejas's agent.

Legal Sufficiency

 The appellants argue in their first point of error that Payne's motion for summary judgment was legally
insufficient as a matter of law because it failed to specifically challenge the evidentiary support needed. Payne
argues that the allegations plead were legally sufficient to negate an element of appellant's claims.

 In a no-evidence motion for summary judgment the movant should specifically state the elements as to which
there is no evidence. Tex. R. Civ. P. 166a(i); Ethridge v. Hamilton County Elec. Coop., 995 S.W.2d 292, 295
(Tex. App.-Waco 1999, no pet.). The rule requires a motion to be "specific in challenging the evidentiary
support for an element of a claim or defense." Tex. R. Civ. P. 166a, cmt. It does not, however, require that
the motion specifically attack the evidentiary components that may prove an element of the cause of action." 
In re Mohawk Rubber Co., 982 S.W.2d 494, 497-98 (Tex. App.-Texarkana 1998, orig. proceeding). As such,
the specificity which is inherent in Texas Rule of Civil Procedure 166a(i) deals with evidentiary support for an
element of a claim or defense, not for "evidentiary components." Baker v. Gregg County, 33 S.W.3d 72, 76
(Tex. App. -Texarkana 2000, no pet.). In Baker, the court held that the motion for no-evidence summary
judgment before it conformed with rule 166a(i) because it stated the elements that were lacking. Id.at 76-77. 
That court reasoned that specificity in evidentiary components is not required. Id. (citing Mohawk, 982
S.W.2d at 497-98).

 Appellants argue that Payne's motion for no-evidence summary judgment was insufficient. In his motion,
Payne asserted that appellants failed to provide credible evidence as to hold Payne personally liable in his
capacity as a shareholder, director or officer. More specifically, Payne listed the following elements of
appellants' claims requiring evidence: 

 

 

 


 That E. M. Payne committed or actively participated [in] any of the acts or omissions alleged by Plaintiffs
to support their causes of action;


 

 

 

 


 That the corporate status of Tejas Building and Development Co., Inc. is used as a means of perpetrat[ing]
a fraud;


 

 

 

 


 That Tejas Building & Development Co., Inc. operates as [a] tool or business conduit of E.M. Payne;


 

 

 

 


 That Tejas Building & Development Co., Inc.'s corporate status is used to evade an existing legal
obligation;


 

 

 

 


 That Tejas Building & Development Co., Inc.'s corporate status is used to achieve or perpetuate a
monopoly;


 

 

 

 


 That Tejas Building & Development Co., Inc.'s corporate status is used to circumvent a statute;


 

 

 

 


 That Tejas Building & Development Co., Inc.'s corporate status is relied on as a protection of crime or to
justify a wrong.


 

Upon examination of the record, we find that Payne's motion for no-evidence summary judgment adequately
addresses the necessary elements needed to be proven by appellants in order to hold Payne personally liable. 
As such, Payne raised issues of no-evidence as to essential elements needed to hold him personally liable.

 Appellants' first point of error is overruled.

Non-Movant's Burden in a No-Evidence Summary Judgment

 Appellants argue in their second point of error that the trial court erred in rendering the no-evidence
summary judgment because they provided sufficient evidence showing that Payne should be held individually
liable under the theories of alter ego and ratification of fraudulent activity. The second point of error also
argues that appellants purchased the lots as a result of fraud committed by Tejas and/or its agent Torres. 

 Texas Rule of Civil Procedure 166a(i) provides that a no-evidence summary judgment is properly granted if
the non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of
material fact. Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). If the evidence
supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their
conclusions, then more than a scintilla of evidence exists.Id. Less than a scintilla of evidence exists when the
evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect
is that there is no evidence. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). Appellants assert
that alter ego is one basis for disregarding the corporate entity, and therefore Payne may be held personally
liable.

 Alter ego is a basis for disregarding the corporate fiction, "where a corporation is organized and operated as a
mere tool or business conduit of another corporation." Castleberry v. Branscum (2), 721 S.W.2d 270, 272
(Tex. 1986) (quoting Pac. Am. Gasoline Co. of Texas v. Miller, 76 S.W.2d 833, 851 (Tex. Civ.
App.-Amarillo 1934, writ ref'd)). It applies "when there is such unity between corporation and individual that
the separateness of the corporation has ceased and holding only the corporation liable would result in
injustice." Id. (citing First Nat'l Bank in Canyon v. Gamble, 134 Tex. 112, 132 S.W.2d 100, 103 (1939)). 
Alter ego "is shown from the total dealings of the corporation and the individual, including the degree to
which . . . corporate and individual property have been kept separately, the amount of financial interest,
ownership and control the individual maintains over the corporation, and whether the corporation has been
used for personal purposes." Id.(citing Lucas v. Texas Indus., Inc., 696 S.W.2d 372, 374 (Tex. 1984)).
Because disregarding the corporate fiction is an equitable doctrine, Texas takes a flexible fact-specific
approach focusing on equity. Id. (citing Gentry v. Credit Plan Corp. of Houston, 528 S.W.2d 571, 575 (Tex.
1975)).

 In this case, Payne owned two-thirds of Tejas's stock, with the other one-third owned by his elderly father
who was not active in Tejas's business. Since 1993, Payne and his father have been the only directors. The
record also raises other fact questions as to alter ego; for example, in Payne's deposition testimony (which was
offered in the motion to deny summary judgment) Payne testified that he neither knew his specific title nor
who the other directors were. Tejas's corporate meetings were held at Payne's car dealership office. The
record also shows that Payne used some of his personnel from the dealership to handle bookkeeping functions
for Tejas. Moreover, the record reveals that of the $379,510.13 listed as accounts receivable in Tejas's
balance sheet, $292,162.00 of that amount is allocated as accounts receivable payable to "EM Payne." See
Castleberry, 721 S.W.2d at 272 (holding that alter ego is shown from the total dealings of the corporation).

 Payne argues that these facts are not enough to pierce the corporate veil. He points to numerous cases that
support the merits of his argument, such as the fact that if a majority or even all of the stock in a corporation is
owned by a single individual, that, in and of itself, does not make the corporation the alter ego of the
individual. Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216, 224 (1942). Payne also correctly notes
that merely because a single person owns the vast majority of shares in a corporation, that evidence alone is
not sufficient to establish that the corporation was the alter ego of an individual. Aztec Mgmt. & Inv. Co., Inc.,
709 S.W.2d 237, 239 (Tex. App.-Corpus Christi 1986, no writ). These arguments, persuasive as they are,
address the merits of the case at the trial level, and while they may afford Payne a stronger argument in front
of a jury, that still does not change the fact that reasonable, fair minds could differ on their conclusions. 
Havner, 953 S.W.2d at 711.

 As such, appellants brought forth more than a scintilla of probative evidence, and the trial judge erred in
rendering the motion for no-evidence summary judgment. Whalen v. Condo. Consulting & Mgmt. Serv., Inc.,
13 S.W.3d 444, 446 (Tex. App. - Corpus Christi 2000, pet. denied). 

 Appellants also argue in their second point of error that they met their burden of producing more than a
scintilla of evidence regarding actions taken by Torres and Tejas. They cite extensive evidence showing that
Torres misrepresented the use restrictions of the lots that the appellants purchased. This portion of appellants'
brief, although detailed and extensive in its description of the alleged misrepresentation that took place, does
not refer to Payne's individual liability in its analysis. As such it does not address the no-evidence summary
judgment that was rendered in favor of Payne. Accordingly, we need not address the details of this portion of
appellants' brief. 

 We REVERSE the trial court's granting of a no-evidence summary judgment and remand this cause for
further proceedings consistent with this opinion. 

 

ROGELIO VALDEZ

Chief Justice 

Concurring and Dissenting opinion by Justice Hinojosa.

 

Opinion delivered and filed

this 7th day of August, 2003.


 

1. The appellants include Pascual Dominguez, Veronica Dominguez, Jaime Perez, Nora Perez, Juan Landeros,
Leticia Tamez, Jose Alfredo Gonzalez, Margarita Gonzalez, Rumaldo Lozano, Pedro Lopez, and Blanca
Lopez.

2. Castleberry was overruled by the business corporation act to the extent that failure to observe corporate
formalities is no longer a factor in proving alter ego. Tex. Bus. Corp. Act Ann. art 2.21(A)(3) (Vernon Supp.
2003). 

**************************************************************************************











NUMBER 13-00-00741-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG



PASCUAL DOMINGUEZ, ET AL., Appellants,



v.





EDWIN M. PAYNE, Appellee.

 



On appeal from the 332nd District Court of Hidalgo County, Texas.




CONCURRING AND DISSENTING OPINION



Before Chief Justice Valdez and Justices Hinojosa and Castillo

Concurring and Dissenting Opinion by Justice Hinojosa





 I concur with the majority's opinion that appellants' first issue should be overruled because the motion for
no-evidence summary judgment of appellee, Edwin M. Payne, adequately addresses the necessary elements
needed to be proven by appellants in order to hold Payne personally liable.

 I dissent from the majority's opinion because I conclude that appellants failed to produce more than a scintilla
of probative evidence to raise a genuine issue of material fact on the issues of alter ego and ratification of
fraudulent activity. Accordingly, I would overrule appellants' second issue and affirm the trial court's
summary judgment.

A. Standard of Review



 When a motion for summary judgment is presented under Texas Rule of Civil Procedure 166a(i) asserting
there is no evidence of one or more essential elements of the nonmovant's claims upon which the nonmovant
would have the burden of proof at trial, the movant does not bear the burden of establishing each element of
its own claim or defense. Gen. Mills Rests., Inc. v. Tex. Wings, Inc., 12 S.W.3d 827, 832 (Tex. App.--Dallas
2000, no pet.); Lampasas v. Spring Ctr., Inc., 988 S.W.2d 428, 432-33 (Tex. App.--Houston [14th Dist.]
1999, no pet.); see also Tex. R. Civ. P. 166a(i). Instead, the burden shifts to the nonmovant to present
enough evidence to be entitled to a trial: evidence that raises a genuine fact issue on the challenged elements.
See Tex. R. Civ. P. 166a cmt. If the nonmovant is unable to proffer enough evidence, the trial judge must
grant the motion. Lampasas, 988 S.W.2d at 433.

 A no-evidence summary judgment is improper if the respondent brings forth more than a scintilla of probative
evidence to raise a genuine issue of material fact. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706,
711 (Tex. 1997); Zapata v. The Children's Clinic, 997 S.W.2d 745, 747 (Tex. App.-Corpus Christi 1999, pet.
denied). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a
mere surmise or suspicion of a fact. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983);Zapata, 997
S.W.2d at 747. More than a scintilla of evidence exists when the evidence rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions. Havner, 953 S.W.2d at 711; Zapata, 997
S.W.2d at 77.

 A no-evidence motion for summary judgment must state the elements as to which there is no evidence; rule
166a(i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case. Tex.
R. Civ. P. 166a(i) and cmt. The rule requires a no-evidence motion for summary judgment to be specific in
alleging a lack of evidence on an essential element of the plaintiff's alleged cause of action, but it does not
require that the motion specifically attack the evidentiary components that may prove an element of the cause
of action. Denton v. Big Spring Hosp. Corp., 998 S.W.2d 294, 298 (Tex. App.--Eastland 1999, no pet.); In
re Mohawk Rubber Co., 982 S.W.2d 494, 497-98 (Tex. App.--Texarkana 1998, no pet.) (orig. proceeding).
The specificity requirement is designed to avoid conclusory no-evidence challenges to an opponent's cause of
action. Mohawk, 982 S.W.2d at 498.

B. No-Evidence Motion for Summary Judgment



 Payne's no-evidence motion for summary judgment asserted: appellants "cannot, by pleadings, depositions,
answers to interrogatories, admissions on file, or other admissible evidence, demonstrate there is evidence to
support its cause of action that E. M. Payne is personally liable for the alleged acts or omissions of the other
Defendants." He further asserted:

Plaintiffs' cause of action against E. M. Payne individually requires proof of the following elements:



 

 


 That E. M. Payne committed or actively participated [sic] any of the acts or omissions alleged by Plaintiffs
to support their causes of action;




 

 


 That the corporate status of Tejas Building & Development Co., Inc. is used as a means of [sic] perpetrate
a fraud; 




 

 


 That Tejas Building & Development Co., Inc. operates as a tool or business conduit of E. M. Payne;




 

 


 That Tejas Building & Development Co., Inc.'s corporate status is used to evade an existing legal
obligation;




 

 


 That Tejas Building & Development Co., Inc.'s corporate status is used to achieve or perpetuate a
monopoly;




 

 


 That Tejas Building & Development Co., Inc.'s corporate status is used to circumvent a statute;




 

 


 That Tejas Building & Development Co., Inc.'s corporate status is relied on as a protection of crime or to
justify a wrong.




After adequate time for discovery, Plaintiffs cannot provide credible evidence to hold E. M. Payne personally
liable for the alleged acts of the other Defendants because Tejas Building & Development Co., Inc. is a
corporation and there is no credible evidence to support any claim that E. M. Payne as either a shareholder,
director or officer of the corporation is personally liable for the alleged acts of the corporation's agents or employees.



C. Summary Judgment Evidence



 In their response to the motion, appellants contended they were fraudulently induced to enter into a contract
for deed with Tejas Building & Development Company and that "Payne's ownership and control of Tejas, the
disregard of corporate formalities, the capitalization of Tejas, and Payne's assent to and ratification of Tejas's
fraud would support a finding that failing to 'pierce the veil' in this case 'would promote injustice and lead to
an inequitable result.'" Appellants attached the following evidence to their response:

1. Affidavit of Appellant Veronica Dominguez



 Veronica Dominguez relied on Torres's representation that all of the lots being offered for sale by Tejas
Building & Development Company, Inc, as Centerpoint lots, were restricted as to use for single family brick
homes; that Torres never indicated that some of the lots shown on the Centerpoint flyer were not Centerpoint
lots and were not subject to the use restriction; and that when individuals began to install trailer homes near
their lot, Dominguez and her husband sent Torres a letter advising him that they planned to return their lots to
Tejas Insurance Agency/Tejas Building & Development Company. Dominguez attached the following
documents to her affidavit:

 (a) The Dominguezes' "Contract of Deed" with Tejas Building & Development, Inc.;



(b) A Centerpoint Flyer;



(c) A Fax from Torres to Dominguez indicating the size and cost of Centerpoint lots and that the lots are
restricted for brick homes;



(d) A letter from the Dominguezes to Torres advising him of their decision to return their lots in the
Centerpoint subdivision to Tejas Insurance Agency/Tejas Building & Development Company and that their
"attempts to meet with Mr. Ed (Bud) Payne, President of the properties, were unsuccessful;" and



(e) A letter from David Embry to the Dominguezes reiterating that they should accept Tejas's offer to allow
them to return one lot and "applying [the] equity to the other lot [they] retained at Centerpoint" while taking
advantage of a discounted price in another lot in the Tejas Cuatro subdivision; the letter further states "Please
understand that [Payne] does not have time to spend on the daily operations of Tejas because of his busy
schedule with Payne Dealer Group and delegates such duties to [Torres], myself and others."



2. Affidavit of Appellants' Attorney, Harold Tummel





 Harold Tummel identified the following documents attached to his affidavit:

(a) The Defendants' First Supplemental Responses to Plaintiffs' Amended Requests for Production
Propounded to Defendants;



 

 


 The Defendants' First Supplemental Responses to Plaintiffs' First Set of Interrogatories;




(c) A document titled "Unanimous Written Consent of Shareholders of Tejas Building & Development
Company, Inc.," signed on May 28, 1993, indicating that E. M. Payne and E. J. Payne are the directors of the corporation;



(d) A document titled "Unanimous Written Consent of Directors of Tejas Building & Development Company,
Inc.," signed on May 28, 1993, indicating that E. M. Payne is President, E. J. Payne is Vice President, and
Paul E. Rose is Secretary-Treasurer of the corporation;



(e) A Stock Transfer Ledger, showing that E. J. Payne owns 250 shares of stock and E. M. Payne owns 750
shares of stock in the corporation;



 

 


 A balance sheet of Tejas Building & Development Company, Inc.;




 (g)-(l) The Plaintiffs' Original Petition through Sixth Amended Petition;

 

(m) Rumaldo Lozano's Responses to Defendants' Interrogatories, reflecting communications with Torres
about the Centerpoint lots;



(n) Each Plaintiff's Contract of Deed with Tejas;



(o) Eddie Torres's Deposition: Torres is employed as an insurance salesman for Tejas Insurance and a real
estate salesman for Tejas Building & Development; Payne is an owner of the corporation and Torres "answers
to him;" Payne and Embry fixed the prices for the lots, terms and conditions for financing, and laid out the
subdivisions; Torres was responsible for the advertising and had the authority to sign a contract for deed with
a prospective buyer; Centerpoint lots were intended for permanent homes as opposed to mobile homes; Torres
"thought he would" have discussed with the potential buyers the fact that the Centerpoint lots were to be used
only for residential single-family homes; he does not believe he spoke with potential buyers regarding the
prohibition of mobile homes or trailers in the subdivision, but he does not recall anyone asking about it; if
anyone had asked, he would have told them mobile homes and trailers were prohibited; Payne would be
familiar with what Torres was properly authorized to say about the property at Centerpoint;



(p) Edwin M. Payne's Deposition: Payne owns 75% of Tejas, and his father, E. J. Payne, owns the remaining
25%; he is not sure who the current directors are; his elderly father is not active in the corporation; he believes
he is CEO and Embry is President; he believes Embry is President because "[Payne doesn't] spend any time
managing or being a part of Tejas, and, with that condition, we felt like we needed more direction from
somebody that was more full-time . . . . [Payne has] never had very much to do with this company;" Paul
Rose, an employee of Payne's auto dealership, is the bookkeeper for Tejas; when warranted, Payne met with
Embry at Payne's auto dealership concerning Tejas;



(q) David Embry's Deposition: As president of Proteus Corporation, Embry helped Tejas develop some
properties by "going through the process to get them platted, planned and developed;" when Embry received
the Dominguezes' letter, he discussed the matter with Torres and Payne and "[Payne] asked [Embry], you
know, as part of what I was doing anyway to just check this out and see what their situation was;" "[Payne]
wouldn't have the time to have contact with prospective buyers. That's exactly why he delegated those things
to Eddie, and then, you know, I came on board, you know, in a consultant fashion. . . ." When asked whose
decision it was not to go along with the Dominguezes' proposal, Embry stated, "I would just say it was a joint
decision of [Payne] and Eddie and I;" and



(r) Jaime Perez's Deposition: Perez and his wife bought a lot on Jade Drive in Centerpoint Subdivision from
Torres and built a home on the lot; before Perez bought the lot, Torres told him "a lot of things, a lot of
promises that he made to me;" Torres told Perez that Centerpoint Subdivision was restricted to brick homes
only; Perez was not told that some of the lots in the Centerpoint flyer were not in Centerpoint Subdivision;
and he was not told that the lots that were not in Centerpoint Subdivision were not restricted to brick homes.



D. Analysis



 Appellants contend the trial court erred in granting Payne's no-evidence motion for summary judgment
because the evidence they proffered was sufficient to support a finding: (1) that Tejas ratified fraud committed
by Torres, and Payne participated in, and assented to, such ratification, and (2) there was such unity between
Payne and Tejas that Tejas ceased to be separate, and that injustice would result if Payne were not held
personally liable for such fraud.

 According to the majority, the following evidence, brought forth by appellants, is more than a scintilla of
probative evidence to raise a genuine issue of material fact:

Payne owned two-thirds of Tejas's stock, with the other one-third owned by his elderly father who was not
active in Tejas's business. Since 1993, Payne and his father have been the only directors. The record also
raises fact questions as to alter ego; for example, in Payne's deposition testimony, Payne testified that he did
not know his specific title, nor who the other directors were. Tejas's corporate meetings were held at Payne's
car dealership office. The record also shows that Payne used some of his personnel from the dealership to
handle bookkeeping functions for Tejas.



 In his brief, Payne argues that "[the facts presented] are not enough to pierce the corporate veil." The
majority acknowledges that "merely because a single person owns the vast majority of shares in a corporation,
that evidence alone is not sufficient to establish that the corporation was the alter ego of an individual," see
Aztec Mgmt. & Inv. Co., Inc. v. McKenzie, 709 S.W.2d 237, 239 (Tex. App.-Corpus Christi 1986, no writ),
but concludes that Payne's arguments "address the merits of the case at the trial level, and while they may
afford Payne a stronger argument in front of a jury, that still does not change the fact that reasonable, fair
minds could differ on their conclusions." I disagree.

 The corporate form normally insulates shareholders, officers, and directors from personal liability for
corporate obligations; but when these individuals abuse the corporate privilege, courts will disregard the
corporate fiction and hold them individually liable. Castleberry v. Branscum, 721 S.W.2d 270, 271 (Tex.
1986); Gonzales County Water Supply Corp. v. Jarzombek, 918 S.W.2d 57, 61 (Tex. App.-Corpus Christi
1996, no writ). We disregard the corporate fiction, even though corporate and individual property have been
kept separate, when the corporate form has been used as part of a basically unfair device to achieve an
inequitable result. Castleberry, 721 S.W.2d at 272. (1) Specifically, we disregard the corporate fiction:

 

 


 when the fiction is used as a means of perpetuating fraud;




 

 


 where a corporation is organized and operated as a mere tool or business conduit of another corporation;




 

 


 where the corporate fiction is resorted to as a means of evading an existing legal obligation;




 

 


 where the corporate fiction is employed to achieve or perpetuate monopoly;




 

 


 where the corporate fiction is used to circumvent a statute; and




 

 


 where the corporate fiction is relied upon as a protection of crime or to justify wrong. 




Id. 

 Alter ego is one basis for disregarding the corporate fiction when there is such unity between a corporation
and an individual that an adherence to the fiction of a separate existence would, under the particular
circumstances, sanction a fraud or promote an injustice. Id. To determine whether an alter ego relationship
exists, the courts look at the totality of the dealings and relationships between the corporation and the
individual. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 228 (Tex. 1990). Alter ego may be shown from the
total dealings of a corporation and individual, including: (1) the degree to which corporate and individual
property have been kept separately; (2) the amount of financial interest, ownership, and control the individual
maintains over the corporation, and (3) whether the corporation has been used for personal purposes.
Castleberry, 721 S.W.2d at 272; see Tex. Bus. Corp. Act Ann. art. 2.21, § A(3) (Vernon Supp. 2002). The
rationale behind the alter ego doctrine is that "if the shareholders themselves disregard the separation of the
corporate enterprise, the law will also disregard it so far as necessary to protect individual and corporate
creditors." Id. However, the fact that a majority or even all of the stock in a corporation is owned by a single
individual does not of itself make the corporation the alter ego of the individual. Aztec Mgmt., 709 S.W.2d at
239.

 After reviewing the record and examining the totality of the relationship between Payne and Tejas, I conclude
that the evidence presented by appellants in response to Payne's no-evidence motion for summary judgment is
not more than a scintilla of evidence. While the evidence establishes that Payne was the majority owner, CEO,
and a director of the corporation, it does not establish that Tejas was the alter ego of Payne. The summary
judgment evidence is replete with references to the fact that Payne did not spend time managing or being a
part of Tejas, rather the duties of the business were delegated to others. For example, Torres was responsible
for advertising the Centerpoint lots, he showed and discussed the lots with Dominguez and Perez, and signed
the contracts for deed with Dominguez and Perez. While Payne may have had corporate meetings at his auto
dealership, there is no more than a scintilla of evidence in the record that individual and corporate property
have not been kept separately or that the corporation has been used for personal purposes. Payne's majority
ownership, without other evidence, does not support appellants' alter ego and ratification of fraud theories.



 I would hold that the trial court did not err in granting Payne's no-evidence motion for summary judgment.
Therefore, I respectfully dissent.



FEDERICO G. HINOJOSA

Justice





Concurring and Dissenting Opinion delivered

and filed this the 7th day of August, 2003.

1. Castleberry v. Branscum, 721 S.W.2d 270 (Tex. 1980), was overruled by Texas Business Corporation Act
article 2.21, § A(3) to the extent that failure to observe corporate formalities is no longer a factor in proving
alter ego. See Tex. Bus. Corp. Act Ann. art 2.21, § A(3) & cmt. (Vernon Supp. 2002).