**Opinion issued December 10, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00443-CV

———————————

**THE HOUSTON AERONAUTICAL HERITAGE SOCIETY, INC.,**
**Appellant**

**V.**

**JOHN L. GRAVES, HARPER TRAMMELL, OSCAR NIPPER, BERNARD MORRIS, MARJORIE EVANS, A.J. HIGH, AND MEGAN LICKLITER-MUNDON, Appellees**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-63921**

---

## MEMORANDUM OPINION

This appeal involves a dispute over the governance of the Houston

Aeronautical Heritage Society, Inc. (HAHS), a Texas non-profit corporation

formed for the purpose of the preservation and restoration of the City of Houston's original air terminal at Hobby Airport. The trial court rendered judgment against HAHS and in favor of some of its corporate directors—John Graves, Harper Trammell, Oscar Nipper, Marjorie Evans, A.J. High, and Bernard Morris (collectively, the "Graves group")—and the administrator for its civil air museum—Megan Lickliter-Mundon. In four issues, HAHS contends that the trial court erred in (1) denying a motion to compel arbitration, (2) dismissing HAHS's declaratory-judgment claim, (3) granting a traditional summary judgment for the Graves group on its declaratory-judgment counterclaim, and (4) granting a no-evidence summary judgment for the Graves group on HAHS's tort and contract claims. We affirm in part, reverse in part, and remand.

## Background

The operation and governance of HAHS through its Board of Directors has been the subject of multiple lawsuits and appellate proceedings.[1] At the time the underlying lawsuit commenced, the HAHS Board had nine directors: George Coats, Kristen Coats, Gary Evans, A.J. High, Oscar Nipper, Harper Trammell, Marjorie Evans, John Graves, and Bernard Morris. These nine directors splintered into two groups competing for control of HAHS. The first group included George

---

[1]    Three proceedings are pending in this Court: (1) an interlocutory appeal bearing case number 01-12-1032-CV, (2) an original proceeding bearing case number 01-12-01066-CV, and (3) this appeal bearing case number 01-12-00443-CV. Today, we issue our opinions in all three proceedings.

Coats, Kristen Coats, and Gary Evans. The second group included the six members of the Graves group.

George and Kristen Coats and Gary Evans have a long history with HAHS. George Coats founded HAHS and volunteered on a full-time basis as president and chairman of the HAHS Board for thirteen years. He performed pro-bono legal services, including "advocacy, negotiation, drafting contracts, dispute resolution, litigation, [and] risk management," and secured funding for the organization through his personal and professional relationships. Kristen Coats, who is married to George Coats, served as a director and the HAHS treasurer. She also maintained the HAHS website and coordinated corporate fundraisers. Gary Evans co-founded HAHS, served as its vice president, and volunteered as a pilot and pro-bono legal counsel. Collectively, the Coatses and Evans contributed more than $100,000 in services to HAHS.

The Coatses and Evans attribute the split within the HAHS Board to John Graves. Graves, a director and the HAHS museum collections manager, "began a correspondence course with a university in the United Kingdom with the stated goal of obtaining a master's degree in museum studies." Graves received permission to "interview the [HAHS] board members as part of his research for his master's thesis" on the condition that he would make his thesis available to HAHS when complete. As alleged by the Coatses and Evans, the HAHS Board

"descended into acrimony and chaos" almost immediately after Graves began his interviews. Graves's thesis was critical of HAHS's governance. Believing the thesis posed an "imminent threat of harm" to HAHS, Evans acted unilaterally to terminate Graves from his positions as director and collections manager.

*The Lawsuit*

In October 2011, the Graves group called a special board meeting for the purpose of nominating, electing, and installing new officers and directors. All six directors in the Graves group signed the special meeting notice. The Coatses and Evans, who were aware that they might be ousted at the special meeting, filed a lawsuit seeking to enjoin the special meeting; to have the trial court declare the rights and responsibilities of the current HAHS officers and directors and the terms of HAHS's governance; and to recover damages against the Graves group under a variety of tort and contract theories, including breach of fiduciary duty, breach of contract, tortious interference, conspiracy, defamation, and business disparagement. The lawsuit was filed in HAHS's name only and not by any of the directors in his or her individual capacity.

The Graves group answered the lawsuit and filed a declaratory-judgment counterclaim seeking determinations that (1) the bylaws attached to its counterclaim were the "current applicable and effective bylaws that govern the affairs of HAHS"; (2) the members of the Graves group were all current members

4

of the HAHS Board; and (3) the October 2011 special meeting was a validly called meeting at which officer and director elections could take place.

On the parties' agreement, the trial court enjoined the October 2011 special meeting pending trial on the merits. HAHS then moved to compel arbitration under its bylaws. The trial court denied the motion.

After some time for discovery, the Graves group moved for a traditional summary judgment on its declaratory-judgment counterclaim and for a no-evidence summary judgment on HAHS's contract and tort claims. The trial court granted the Graves group's summary judgment motions and rendered a final judgment declaring that (1) HAHS take nothing on any of its claims against the Graves group; (2) the bylaws presented by the Graves group were the "current, applicable, and effective bylaws that govern[ed] the affairs of [HAHS]"; (3) all of the members of the Graves group were members of the HAHS Board; and (4) the October 2011 special meeting was a meeting authorized by HAHS's bylaws at which officer and director elections could have taken place. The final judgment also dismissed HAHS's declaratory-judgment claim and dissolved the agreed temporary injunction.

What occurred after the trial court rendered its judgment is, in pertinent part, undisputed; the parties' disagreement is over the legal consequence of the post-judgment events. Two separate special meetings were called with two

5

different results. First, the Graves group noticed a special directors meeting for April 20, 2012, at which a majority of the Board voted to remove the Coatses and Evans from their officer and director positions, to elect new officers, and to amend the bylaws. Then, Evans noticed a special members meeting for the following day. The purported result of the second meeting on April 21 was the election of a new board consisting of Stephen Holmes, Debbie Holmes, Clinton Holmes, Dana Atkinson, Gregory Evans, Christopher Gilbert, Amy Rogers, Tyler Hall, and Jerry Smith. We refer to the group purporting to be directors of HAHS as a result of the April 21 special members meeting as the "Holmes group."

The Graves group challenged the validity of the April 21 meeting and sought injunctive relief to enforce the trial court's judgment. The trial court granted the relief and entered an order affirming that the special meeting noticed in October 2011 "was a validly noticed special meeting of the HAHS Board of Directors during which officer and director elections could have taken place" and ruling that the special meeting held on April 20 was consistent with the final judgment. The trial court enjoined "Messrs. Coats and Evans, and persons acting at the direction or in concert with them, including Steve Holmes, Debbie Holmes, Jerry Smith, Dana Atkinson, Greg Evans, Penny Evans, and Clinton Holmes . . . and each of their respective agents, employees, servants, and attorneys . . . from undertaking

any actions based on the purported election of directors at the April 21 [ ] special meeting of members."

Stephen Holmes and Dana Atkinson—purportedly as directors elected at the April 21 special meeting—appealed the trial court's final judgment on HAHS's behalf.[2] The appeal is brought in HAHS's name only and not on behalf of any current or former director in his or her individual capacity.

## Motion to Compel Arbitration

In its first issue, the Holmes group contends that the trial court erred in denying HAHS's motion to compel arbitration. The Graves group does not dispute that the HAHS bylaws contained a valid arbitration clause,[3] but responds that HAHS's claims fell outside the scope of that clause. The Graves group alternatively argues that HAHS waived its right to arbitrate by substantially

---

[2] The Graves group contends that this Court lacks jurisdiction over this appeal because the individuals pursuing the appeal—Holmes and Atkinson—lack standing or authority or both to act on HAHS's behalf and because the individuals who filed the lawsuit—the Coatses and Evans—are no longer HAHS officers or directors. The trial court's judgment, in effect, authorized the change in control of HAHS and ouster of the Coatses and Evans. Thus, the issue of standing and authority is intertwined with the propriety of the trial court's judgment. Because this Court has jurisdiction to determine its own jurisdiction, we will consider the merits of Holmes and Atkinson's appeal. *United States v. Ruiz*, 536 U.S. 622, 628, 122 S. Ct. 2450, 2454 (2002); *Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007); *In re Washington*, 7 S.W.3d 181, 182 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

[3] It is undisputed that the Graves group purported to amend the bylaws at the April 20 special directors meeting. We do not address the amended bylaws, however, because the original bylaws were in effect at the time the trial court made its ruling on the motion to compel arbitration.

invoking the litigation process. We do not reach the waiver issue because we agree that HAHS's claims were beyond the arbitration clause's scope.

## A.     Legal standards

It is not enough for a party demanding arbitration to show that a valid arbitration clause exists; the party must also show that its claims fall within the scope of the clause. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005) (per curiam). Whether an arbitration clause encompasses a claim is a matter of contract interpretation and a question of law for the court. *Kline v. O'Quinn*, 874 S.W.2d 776, 782 (Tex. App.—Houston [14th Dist.] 1994, writ denied). In making this legal determination, we focus on the movant's factual allegations rather than the causes of action asserted. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992). Any doubts as to which claims fall within the scope of an arbitration clause must be resolved in favor of arbitration. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995).

## B.     Denial of motion to compel arbitration was not abuse of discretion

Given the parties' agreement as to the existence of a valid arbitration clause, the only matter presented for our review is whether the arbitration clause covers

8

the claims asserted in this litigation. The arbitration clause, which appears in that part of the HAHS bylaws entitled "Members," provides:

> In any dispute between members relating to the activities of the Corporation, all parties involved shall cooperate in good faith to resolve the dispute. If the parties cannot resolve the dispute between themselves, they shall cooperate to select one or more mediators to help resolve the dispute. If no timely resolution occurs through mediation, any party may demand binding arbitration as described in the Revised Civil Statutes Article 238–20 or the Revised Civil Statutes Article 224 et seq. only if the parties have met together with a mediator. This paragraph shall not apply to a dispute involving the Corporation as a party relating to the sanctioning, suspension or expulsion of a member from the Corporation. The Board of Directors shall have the discretion to authorize the use of the Corporation's funds for mediation or arbitration of dispute as described in this paragraph.

The clause's first sentence dictates its scope. Thus, to determine whether the trial court erred in refusing to order arbitration, we must determine whether HAHS's petition or the Graves group's counterclaim alleged a "dispute between members relating to the activities of the Corporation."

HAHS's petition asserts various theories of liabilities against the six directors in the Graves group. Even though the bylaws provide that all directors of the corporation shall also be members, the lawsuit is not a dispute between members. The factual allegations supporting HAHS's causes of action relate exclusively to the Graves group member's acts and omissions as directors. Likewise, the Graves group's counterclaim relates solely to the operation and governance of HAHS through its board of directors. Thus, this is a dispute between

9

directors for control of HAHS, not a dispute between members relating to corporate activities. We conclude that the claims asserted in this litigation fall outside the scope of the arbitration clause.

Our conclusion is buttressed by this Court's holding in an analogous case. In *Texas Private Employment Ass'n v. Lyn-Jay International, Inc.*, 888 S.W.2d 529 (Tex. App.—Houston [1st Dist.] 1994, no writ), the defendant association's bylaws called for arbitration of disputes between members—specifically, "any controversy . . . arising between any two or more members of the association." The association moved to compel arbitration of a suit brought by its members against the association, its officers, and its directors. The trial court denied the motion to compel, and this Court affirmed. In affirming, the Court held that because the plain language of the arbitration clause required arbitration between members, it did not apply to a dispute between the association and its members. The same result is required here where the lawsuit, as filed and pleaded, is between HAHS and six of its directors. For these reasons, we hold that the trial court did not err by denying HAHS's motion to compel arbitration, and we overrule HAHS's first issue.

**Traditional Summary Judgment**

In its second and third issues, HAHS challenges the trial court's traditional summary judgment for the Graves group on its declaratory-judgment counterclaim. Specifically, HAHS argues that (1) the counterclaim was not the proper subject of

10

a declaratory judgment and (2) genuine fact issues precluded summary judgment on the counterclaim. HAHS further argues that its own declaratory-judgment claim should not have been dismissed as part of the trial court's summary judgment ruling because it was not the subject of the Graves group's motion.

## A.     Counterclaim was proper subject of declaratory judgment

We turn first to whether, as HAHS contends, the Graves group could not properly assert a declaratory-judgment counterclaim because HAHS's claim for the same relief was already pending in the trial court.

HAHS correctly states the general rule that a declaratory judgment is not available to settle disputes already pending before a court. *See BHP Petroleum Co., Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990); *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 701−02 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Howell v. Mauzy*, 899 S.W.2d 690, 706 (Tex. App.—Austin 1994, writ denied). While this rule precludes a counterclaim that presents nothing more than a denial of the plaintiff's claim, a court may allow a declaratory-judgment counterclaim if it states a claim for affirmative relief. *See Millard*, 800 S.W.2d at 841 (instructing that "Texas trial courts should decline to exercise jurisdiction seeking a declaration of non-liability in a tort action," but acknowledging that "[i]n certain instances . . . a defensive declaratory judgment may present issues beyond those raised by the plaintiff."); *Hitchcock Props., Inc. v. Levering*, 776 S.W.2d

11

236, 239 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (same); *Howell*, 899 S.W.2d at 706 (same). "'To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it.'" *Gen. Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990) (quoting *Weaver v. Jock*, 717 S.W.2d 654, 657 (Tex. App.—Waco 1986, writ ref'd n.r.e.)).

We look to the Texas Supreme Court's opinion in *BHP Petroleum Co., Inc. v. Millard* for guidance in determining when a defensive declaratory judgment presents issues beyond those raised by the plaintiff. 800 S.W.2d at 841. There, the plaintiff sued the defendant for breach of a gas-purchase contract's "take-or-pay" provisions. *Id.* at 842. The defendant counterclaimed for a declaratory judgment "[t]hat events have occurred which constitute force majeure, as the parties agreed to define the term, or other causes not reasonably within the control of ANR and its customers, which have affected and will continue for the foreseeable future to affect ANR's takes of natural gas under the Contracts[.]" *Id.* The defendant thus sought an interpretation of the gas purchase contract that would define the parties' future contractual obligations. Because the gas purchase contract represented an ongoing relationship, the Court held that the defendant's declaratory-judgment

12

counterclaim was proper as a cause of action on which the defendant could recover relief if the plaintiff abandoned or failed to establish its claims. *Id.*

In contrast, the court of appeals in *Newman Oil Co. v. Alkek,* 614 S.W.2d 653, 655 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.) held a counterclaim was improper, where the plaintiffs sued the defendants for fraudulent misrepresentations, breach of contract, and violations of the Deceptive Trade Practices Act. *Id.* at 653–55. The defendants counterclaimed for declaratory relief and moved for summary judgment on the basis that they had not committed fraud, engaged in common law tort or deceptive trade practices, or breached any contracts with the plaintiffs. *Id.* at 654–55. Even though the defendants framed the counterclaim as a request for declaratory relief, the court of appeals held that the defendants did not plead facts upon which affirmative relief could be granted. *Id.* at 655. Thus, the counterclaims were improper as mere denials of the plaintiffs' causes of action. *Id.*

In this case, HAHS asserted claims for breach of fiduciary duty, breach of contract, conspiracy, defamation and libel, business disparagement, and tortious interference. Its original petition also sought a declaration of the "rights, responsibilities and obligations of the parties," specifically, with respect to "the current officers and directors of [the corporation] and [ ] the terms of its

13

organizational governance." The Graves group's counterclaim sought a declaration that:

> i.     the bylaws attached [to their original counterclaim] as Exhibit A [were] the current applicable and effective bylaws and govern[ed] the affairs of HAHS;
>
> ii.    . . . John L. Graves, Harper Trammell, Oscar Nipper, Marjorie Evans, Bernard Morris, and Captain A.J. High [were] all current members of the HAHS Board of Directors; and
>
> iii.   . . . the special meeting called for October 24, 2011 by the [Graves group] was a validly called special meeting and that the [Graves group] ha[d] the right to call such a special meeting to hold officer and/or director elections.

After the Graves group filed its counterclaim, HAHS amended its declaratory-judgment claim to request more specific relief, including determinations that the members of the Graves group had "constructively abandoned their positions as Directors of [HAHS], that [their] terms as directors ha[d] expired, that the Members of [HAHS] [were] entitled to elect the next board of directors of [HAHS], . . . and that [the Graves group's] proposed and contemplated actions constitute[d] a fundamental action, as defined by the Texas Business Organizations Code, which must be approved by a vote of [HAHS's] members."

We conclude that although it sought determinations about the operation and governance of HAHS, which are matters HAHS put before the trial court in its claim for declaratory relief, the Graves group stated a cause of action on which it could recover relief if HAHS abandoned or failed to prove its claims. *See Millard,*

14

800 S.W.2d at 842. The declaration sought by the Graves group in its counterclaim would have the effect of defining the future rights and obligations of HAHS and its various officers, directors, and members. Thus, the counterclaim was more than a mere denial of liability on HAHS's claims and was the proper subject of a declaratory judgment. *Compare Millard*, 800 S.W.2d at 841 (holding that defendant's counterclaim was claim for affirmative relief and declaratory judgment was proper), *and Georgiades v. Di Ferrante,* 871 S.W.2d 878, 880–81 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (same), *with Nat'l Enter., Inc. v. E.N.E. Props.,* 167 S.W.3d 39, 43–44 (Tex. App.—Waco 2005, no pet.) (holding that defendant's counterclaim was not claim for affirmative relief and declaratory judgment was improper), *Anderson v. New Prop. Owners' Ass'n of Newport, Inc.,* 122 S.W.3d 378, 391 (Tex. App.—Texarkana 2003, pet. denied) (same), *Howell,* 899 S.W.2d at 706–07 (same), *and HECI Exploration Co. v. Clajon Gas Co.,* 843 S.W.2d 622, 639 (Tex. App.—Austin 1992, writ denied) (same).

**B.    Trial court did not err in granting summary judgment on declaratory-judgment counterclaim**

Having concluded that the Graves group could properly request declaratory relief in its counterclaim, we turn now to whether the trial court erred in granting such relief. HAHS argues that the trial court erred in granting summary judgment because genuine issues of material fact exist as to whether (1) "any or all of the provisions of HAHS'[s] Bylaws were waived and/or acquiesced by the actions and

15

inactions of the Board" and (2) Oscar Nipper resigned and John Graves was removed from their positions as directors.

### 1. Standards of review

We review the trial court's traditional summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009). The standard of review for a traditional summary judgment is well established: (1) the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in the nonmovant's favor. *See, e.g., Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985); *Richards v. Transocean*, 333 S.W.3d 326, 331 n.5 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Goston v. Hutchison*, 853 S.W.2d 729, 731 (Tex. App.—Houston [1st Dist.] 1993, no writ).

Our review also involves interpretation of HAHS's bylaws. To that end, we apply ordinary principles of contractual interpretation. *See, e.g., MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650−51 (Tex. 1999); *In re Aguilar*, 344 S.W.3d 41, 49−50 (Tex. App.—El Paso 2011, orig. proceeding). We construe written instruments, like bylaws, as a whole in an effort to harmonize and give

16

effect to all the provisions of the instrument so that none will be rendered meaningless. *Shell Oil Co. v. Khan,* 138 S.W.3d 288, 292 (Tex. 2004). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.*

## 2. No fact issue exists concerning waiver or abandonment of any bylaw

In its summary judgment motion, the Graves group requested a declaration that the bylaws attached to its motion were the "current applicable and effective bylaws and govern[ed] the affairs of HAHS." HAHS did not dispute in the trial court that the bylaws presented by the Graves group were the bylaws adopted by HAHS; that is, HAHS did not contest the bylaws' authenticity or contend that the bylaws were inaccurate or incomplete. Instead, HAHS argued that certain bylaws—namely, the provision for the removal of officers and directors at a special meeting called by either the president or two directors and the provision for two-year director term limits—had been amended or waived by the Board's actions and omissions.

Although the HAHS bylaws expressly provide that they "govern the affairs of [HAHS]" and may be altered, amended, or repealed by a majority vote of the Board, HAHS cites this Court's opinion in *Keating v. K-C-K Corp.* for the proposition that the bylaws are subject to amendment by acts evidencing a uniform course of proceeding, or usage and acquiescence. 383 S.W.2d 69, 71 (Tex. Civ.

17

App.—Houston [1st Dist.] 1964, no writ) (stating that when the corporate charter and applicable corporate statutes are silent as to formalities to be observed in enacting or amending bylaws, "no particular mode of enactment or formality is necessary" and, "[u]nder such circumstances, it is a general rule that by-laws may be adopted, or amended, orally or by acts evidenced by a uniform course of proceeding, or usage and acquiescence").

*Keating* involved a contest over management of a closely held corporation. *Id.* at 69. The primary dispute was whether the corporation's stockholders should elect three or four directors at the stockholders' meeting. *Id.* at 69−70. The appellant alleged that a bylaw requiring the corporation to have at least three directors had been amended by the conduct of the shareholders and directors to require the election of four directors. *Id.* at 71. Two things persuaded the court to hold as a matter of law that the bylaws had been amended to require four directors: (1) while the corporation's bylaws allowed amendment only by the affirmative vote of not less than three-fourths of the shareholders, they did not specify any formalities to be observed for such a vote; and (2) there was undisputed evidence that for the four years preceding the meeting in question four directors were elected. *Id.* at 71.

In support of its contention that it has raised a fact issue under *Keating*, HAHS has provided this Court with only a general citation to three summary

18

judgment exhibits—the affidavits of George Coats, Kristen Coats, and Gary Evans. HAHS has not provided any substantive discussion of the statements contained in the affidavits and has not explained how the affidavits or their attachments create fact issues on amendment or waiver. Nevertheless, in our independent review of the affidavits, we note the following assertions contained in all three affidavits that are relevant to a *Keating* analysis:

- [HAHS's] by-laws were drafted in 1998, prior to its incorporation and long before it began actual operation of the Museum. [HAHS] has amended its bylaws on a few occasions. In actual practice, [HAHS] and its Board have generally complied with some provisions of the bylaws, but have generally ignored others.

- The bylaws contain an express two year term for directors and annual re-election of officers. If the bylaws are followed to the letter, [HAHS] has neither officers nor directors. The Officer Directors, Defendants Trammell, High, Nipper, and Evans were last re-elected in 2006. Defendant Graves was elected to the Board in 2007 and Defendant Morris was elected to the Board on September 4, 2009.

- Until [ ] Graves'[s] removal, no director had ever been removed from the board, nor has any director ever stood for reelection and been defeated. There was no motion or formal request to conduct board elections at any time between 2006 and the [Graves group's] notice of special meeting in October 2011.

- Prior to [the Graves group's] October 14, 2011 notice of special meeting (which is the mechanism set forth in the bylaws for removal of directors), no special meeting had ever been requested, noticed or conducted at any point in [HAHS's] existence.

Considering this evidence in the appropriate light, we conclude that it does not raise a fact issue as to the amendment or waiver of special board meetings as a

19

mechanism for the removal of officers and directors. The affidavits assert only that "no special meeting had ever been requested" before the Graves group's October 2011 notice. They are not evidence that the Board uniformly used a different course of proceeding to remove officers and directors. Therefore, this case is distinct from *Keating* in which the appellant showed an affirmative course of conduct to elect more than three directors on at least four prior occasions. *See id.* at 71. Our conclusion that a fact issue does not exist is buttressed by the general law of waiver, which would require evidence of an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *See Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987); *Mass. Bonding & Ins. Co. v. Orkin Exterm.. Co.*, 416 S.W.2d 396, 401 (Tex. 1967).

HAHS's assertions regarding abandonment or waiver of the two-year director term limits, however, require closer examination. Neither side disputes on appeal that, although director elections had not occurred in the two years before the Graves group noticed the October 2011 special meeting, there were at least seven current directors of HAHS (specifically, George Coats, Kristen Coats, Gary Evans, Harper Trammell, A.J. High, Bernard Morris, and Marjorie Evans) and no director had ever been removed on expiration of a two-year term.[4] If the bylaw stating that

---

[4] Although HAHS asserts in its statement of facts that A.J. High resigned with Oscar Nipper at a meeting in November 2010, HAHS has not challenged the trial court's finding in its final judgment that High was still a director. HAHS's

20

"[e]ach director shall serve for a term of two (2) years" is considered in isolation, a fact issue might exist as to whether HAHS had any directors. As argued by the Graves group, however, the undisputed evidence of director service beyond two years is not evidence of amendment or waiver of any term limit; rather, it is evidence that demonstrates conduct consistent with a reading of the bylaws as a whole. *See Khan*, 138 S.W.3d at 292 (instructing that courts should construe written instruments as a whole and attempt to harmonize and give effect to all provisions). The stated two-year term does not include a cap or otherwise limit the number of terms a director may serve. When read together with another provision requiring directors to "hold office until a successor is elected and qualified," the two-year term establishes only a minimum time of service that expires upon the election of a successor. We do not read the provision to establish fixed term limits. Consequently, the assertions in the Coatses' and Evans's affidavits regarding the lack of director elections in the years preceding this lawsuit do not create a fact issue as to amendment or waiver of the bylaws. Because there was no fact issue as to the amendment or waiver, the trial court did not err in finding that the bylaws governed the affairs of HAHS or that a special meeting could be called for the removal of directors.

challenge to the declaration in the final judgment regarding the composition of the Board is limited to Oscar Nipper's and John Graves's status.

21

### 3. A fact issue does exist as to the HAHS Board's composition

In its final challenge to the traditional-summary-judgment ruling, HAHS contends that the trial court erred by declaring that Oscar Nipper and John Graves were directors. More specifically, HAHS asserts that the summary-judgment evidence raises genuine issues of material fact as to whether (1) John Graves's term limit expired or he abandoned his positions by acting in a manner harmful to HAHS and thereby opened himself up to termination by Evans and (2) Oscar Nipper voluntarily resigned at a Board meeting.

Graves's status as a director is certain. We have already rejected HAHS's contention that the trial court could not declare Graves a director because his term limit had expired. And HAHS's contention that Graves effectively resigned or made himself subject to removal by Evans, acting as President, by "sowing discord and strife within [HAHS], and his insistence on not only writing but widely disseminating his paper (which poses such a grave risk to the Society)" is unsupported by legal authority. Indeed, Evans's purported unilateral removal of Graves from the HAHS Board is contrary to section 22.211 of the Texas Business Organizations Code, which establishes two methods for removal of a director: (1) "any procedure provided by the . . . bylaws of the corporation" and (2) in the absence of such a provision, "by the persons entitled to elect, designate, or appoint the director. If the director was elected to office, removal requires an affirmative

vote equal to the vote necessary to elect the director." TEX. BUS. ORGS. CODE ANN. § 22.211 (West 2012). Because the bylaws provide for removal of a director by majority vote of a quorum of the directors at a special directors' meeting and because the bylaws do not provide the HAHS President with authority to elect, designate, or appoint directors, we conclude that no genuine issue of fact exists as to Graves's status as a director at the time the trial court rendered judgment.

Regarding Nipper, we note the bylaws' silence about the proper procedures for the resignation of directors. Section 22.2111 of the Texas Business Organizations Code provides that "a director of a corporation may resign at any time by providing written notice to the corporation." TEX. BUS. ORGS. CODE ANN. § 22.2111 (West 2012). However, the permissive term "may" in the statute indicates that a writing is one possible method of resignation, not that it is the sole method permitted by law. *See Inwood N. Homeowners' Assoc., Inc. v. Meier*, 625 S.W.2d 742, 743 (Tex. App.—Houston [1st Dist.] 1981, no writ) ("(T)he ordinary meaning of 'may' is merely permissive in character.") (quoting *Mitchell v. Hancock*, 196 S.W. 694, 700 (Tex. Civ. App. 1917, no writ)).

It is undisputed that Nipper did not resign in writing. We agree with HAHS, however, that the summary-judgment record establishes a fact issue as to whether Nipper orally resigned at a board meeting. Graves averred in an affidavit that, "[t]o [his] knowledge, Oscar Nipper never resigned from the HAHS Board of Directors,

23

either orally or in writing, at any time." His notes from the board meeting at which HAHS alleges Nipper resigned, however, recall that a "major attempt to railroad [him] was stopped. Two board members got up, said 'you are trying to railroad this man!', and resigned." Although Graves's notes do not name Nipper specifically, the allegations in the trial court regarding resignations at the meeting concerned only two directors—A.J. High and Nipper. We conclude that the inconsistencies between Graves's affidavit and his notes create a fact issue as to Nipper's status as a director, and consequently, the trial court erred in declaring that Nipper was a member of the HAHS Board.[5] The trial court's other declarations are not in error.

## No-evidence Summary Judgment

In its fourth issue, HAHS argues that the trial court erred in granting a no-evidence summary judgment on HAHS's contract and tort claims because there was inadequate time for discovery and genuine issues of material fact exist. In response, the Graves group disputes that the no-evidence summary judgment ruling

---

[5] HAHS also argues that the trial court erred in dismissing HAHS's declaratory-judgment claim because the Graves group did not move for summary judgment on that claim. The trial court's partial summary judgment order on the traditional motion dismissed HAHS's declaratory judgment claim. The final judgment, which incorporates the partial summary judgment order, provides both that HAHS take nothing on its claims and that HAHS's declaratory-judgment claim is dismissed. The court did not err because the opposing declaratory actions by the two sides were intertwined to the extent that the trial court's ruling granting the Graves group's claim was effectively a denial of HAHS's claim. In any event, any error was harmless because HAHS acknowledges in its briefing that the trial court could have ordered that HAHS take nothing on the claim (so the dismissal and take nothing provisions are effectively duplicative relief).

24

was premature and argues that the trial court's ruling should stand because HAHS did not present any evidence of damages and has not addressed each challenged element of its claims on appeal. We agree.

**A.     No error in refusing to continue the summary-judgment proceedings**

We turn first to the timing of the summary-judgment proceedings. The trial court may order a continuance of a summary-judgment hearing if it appears "from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition." TEX. R. CIV. P. 166a(g). But a party cannot simply complain that additional discovery is required and describe in conclusory fashion the additional discovery that it believes is needed; the party must also explain how the discovery would aid him in responding to the summary judgment motion. *Retzlaff v.Mendieta-Morales*, 356 S.W.3d 676, 681 (Tex. App.—El Paso 2011, no pet.); *Brown v. Brown*, 145 S.W.3d 745, 749 (Tex. App.—Dallas 2004, pet. denied) (affirming denial of request for continuance where appellant failed to explain need for further discovery); *Crofton v. Amoco Chem. Co.*, No. 01-01-00526-CV, 2003 WL 21297588, at *7 (Tex. App.—Houston [1st Dist.] May 30, 2003, pet. denied). We review the grant or denial of a motion for continuance for an abuse of discretion. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002).

HAHS failed to explain the need for additional discovery or how the additional discovery would aid in the preparation of a summary-judgment response in its motion for continuance or supplemental motion or at the summary-judgment hearing. The only reason submitted for the continuance was that the Graves group's responses to discovery already propounded were not complete—in other words, that discovery had not concluded. In the absence of an explanation of the need for additional discovery, the trial court did not err in denying HAHS's motion for a continuance of the summary-judgment proceedings. *See Retzlaff*, 356 S.W.3d at 681; *Brown*, 914 S.W.3d at 749; *Crofton*, 2003 WL 21297588, at *7.

**B.      HAHS failed to raise an issue of fact as to damages for any of its contract or tort claims against the Graves group members**

The members of the Graves group filed three separate no-evidence summary-judgment motions: Lickliter-Mudon filed one motion, Graves filed another, and the remaining directors filed their own motion. Collectively the three motions challenged every element of HAHS's contract and tort claims, including the common element of damages. We therefore turn to the issue of whether HAHS raised a fact issue on the challenged elements of its contract and tort claims so as to defeat the Graves group's motion for no-evidence summary judgment on the same.

**1.      Standard of review**

A no-evidence summary judgment is equivalent to a pretrial directed verdict.

26

*West v. SMG*, 318 S.W.3d 430, 437 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Rangel v. Lapin*, 177 S.W.3d 17, 20 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Therefore, we apply the same legal sufficiency standard of review. *Rangel*, 177 S.W.3d at 20; *see also West*, 318 S.W.3d at 437; *Zapata v. Children's Clinic*, 997 S.W.2d 745, 747 (Tex. App.—Corpus Christi 1999, pet. denied). In an appeal of a no-evidence summary judgment, we review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *West*, 318 S.W.3d at 437; *Rangel*, 177 S.W.3d at 20. If the nonmovant produces evidence to raise a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i). All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact. *Zapata*, 997 S.W.2d at 747. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id*. (citing *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied) (quoting *Kindred v. Con/Chem Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). Conversely, more than a scintilla exists when the evidence in support of a challenged element "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). The

burden of producing evidence is entirely on the nonmovant; the movant has no burden to attach any evidence to the motion. TEX. R. CIV. P. 166a(i).

2. **The only evidence of HAHS's alleged damages was not before the trial court at the time it ruled**

With respect to damages, HAHS alleged that Graves's conduct and the discord it caused impaired HAHS's ability to raise funds for its future operations by distracting the directors from conducting capital campaigns. HAHS also alleges that it "would have raised $500,000.00 for much needed facilities, improvements, staff and board development." In support of these allegation on appeal, HAHS cites testimony from Harper Trammell purportedly identifying a $50,000 donation that was lost as a result of strife on the HAHS Board. But that testimony was submitted by HAHS as part of a bill of exceptions long after the trial court ruled on the no-evidence summary-judgment motions, and the trial court was not obligated to consider it. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) ("Summary judgment evidence may be filed late, but only with leave of court."); *Mathis v. RKL Design/Build*, 189 S.W.3d 839, 843 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("If a party files late summary judgment evidence, and no order appears in the record granting leave to file, the evidence will not be considered as being before the court."). Likewise, HAHS's allegations about the $500,000 capital campaign are unsupported by evidence in the summary-judgment record; indeed, HAHS does not even cite to any supporting evidence in its briefing

28

on appeal. In the absence of such evidence, the lost $500,000 capital campaign is speculative and not a valid ground for defeating the no-evidence summary judgment motions. *See Pink v. Goodyear Tire & Rubber Co.*, 324 S.W.3d 290, 297 (Tex. App.—Beaumont 2010, pet. dism'd) ("A party may not avoid a no-evidence summary judgment by presenting speculation."). Because HAHS did not raise an issue of fact on damages, we hold that the trial court did not err in granting the no-evidence summary judgments.

Accordingly, we overrule HAHS's fourth issue.

## Conclusion

Having concluded that a fact issue exists as to Oscar Nipper's status as a member of the HAHS Board of Directors but having found no error with respect to any other ruling by the trial court made the subject of this appeal, we affirm in part, reverse in part, and remand. Specifically, we reverse that part of the trial court's final judgment declaring Oscar Nipper a member of the HAHS Board and remand for further proceedings to determine Oscar Nipper's status. The trial court's judgment is affirmed in all other respects. All outstanding motions are dismissed as moot.

Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

29